RICHARD L. DURGIN AND MARY C. DURGIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Durgin
Docket No. 12527-90
United States Tax Court
T.C. Memo 1992-656; 1992 Tax Ct. Memo LEXIS 692; 64 T.C.M. (CCH) 1287; November 9, 1992, Filed *692 Decision will be entered for respondent. For Petitioners: John R. Holsinger and Gerald H. Litwin. For Respondent: Leslie J. Spiegel. FAY
FAY
MEMORANDUM OPINION FAY, Judge: This case was assigned to Special Trial Judge Carleton D. Powell pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181 and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge that is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE POWELL, Special Trial Judge: On March 19, 1990, respondent mailed a notice of deficiency to petitioner [2] in which respondent determined a deficiency in the amount of $ 106,015.14 for the taxable year 1981 resulting from the disallowance of partnership losses. Petitioner filed a timely petition in which he raised the defense that the period of limitations had expired prior to the mailing of the notice of deficiency. At the time *693 the petition was filed, petitioners resided in Northfield, Illinois. The issue is whether respondent timely issued the notice of deficiency in this case. This issue turns on whether a Special Consent to Extend the Time to Assess Tax (Form 872-A) was valid. Petitioner concedes that, if the Form 872-A is valid, the deficiency determined in the notice of deficiency for 1981 is correct. The facts may be summarized as follows. In 1980, petitioner invested $ 50,000 in Betar Associates (Betar), a limited partnership allegedly engaged in coal mining, of which $ 30,000 was paid in 1980 and $ 20,000 was paid in 1981. In 1981, he invested $ 60,000 in Overlord Associates (Overlord), another limited partnership, of which $ 39,000 was paid in 1981 and $ 21,000 was paid in 1982. As the result of these investments, petitioner claimed deductions *694 for losses in the amounts of $ 100,742, $ 212,801, and $ 45,955 for the taxable years 1980, 1981 and 1982, respectively. These investments were made on the advice of Richard C. Weidenbaum, who had been petitioner's accountant for several years. Mr. Weidenbaum is a partner of Weidenbaum, Ryder & Co. (Weidenbaum, Ryder) in its Englewood Cliffs, New Jersey, office. At sometime during 1982, respondent became quite interested in the losses generated by these (and other similar) partnerships and commenced examinations of the partnerships. The examination appointment letters were sent to the New Jersey office of Weidenbaum, Ryder, which was the address contained on the information returns of the partnership. Respondent's interest prompted the limited partners to establish a defense fund known as the Coal Mining Tax Defense Fund (the Defense Fund). On the advice of Mr. Weidenbaum, petitioner contributed money to the Defense Fund. Petitioner's 1980 return was filed on October 15, 1981. [3] Sometime prior to May 24, 1984, respondent contacted petitioner and requested that he execute a waiver of the period of limitations within which an assessment could be made. Petitioner contacted Mr. *695 Weidenbaum, and, on May 24, 1984, Mr. Weidenbaum wrote respondent and requested that the waiver be restricted to adjustments to the Betar loss claimed on the 1980 return. On June 5, 1984, petitioner executed a restricted waiver (Form 872-A) and sent it to Mr. Weidenbaum to be forwarded to respondent. That waiver, inter alia, extended the period of limitations "for the * * * taxpayer(s) for the period(s) ended December 31, 1980", until 90 days after respondent received a Form 872-T (Notice of Termination of Consent to Extend the Time to Assess Tax) from petitioner or respondent mailed a Form 872-T to petitioner or respondent mailed a statutory notice of deficiency. Respondent apparently offered to settle the 1980 year by allowing petitioner to deduct the amount of cash that was invested in Betar, and, on April 26, 1984, the Defense Fund communicated the offer to the investors of Betar. On October 27, 1986, petitioner accepted the offer. *696 The 1982 return follows a similar pattern. That return was filed on April 15, 1983. An unrestricted waiver was sent to petitioner on October 28, 1985. On November 5, 1985, Mr. Weidenbaum requested the waiver be restricted to "the entity or entities under consideration". On January 22, 1986, Mr. Weidenbaum wrote respondent and again requested a restricted waiver. In that letter Mr. Weidenbaum stated "We certainly do not want any deficiencies [sic] issued to our client when all they request is a restricted 872". On January 28, 1986, petitioner executed a restricted waiver. The 1982 deficiency was also settled. The 1981 return is the focus of this case. The return was filed on April 15, 1982. Prior to March 27, 1985, respondent sent to petitioner a restricted Form 872-A. Petitioner did not notice whether or not a taxable year was stated on the waiver. On March 27, 1985, after consulting with Mr. Weidenbaum, petitioner executed a waiver restricted to Betar and Overlord. Petitioner then forwarded the waiver to Weidenbaum, Ryder where it was reviewed by either Mr. Weidenbaum or his secretary and assistant, Kay Supik. No one noticed whether or not there was a taxable year *697 designated on the form. Weidenbaum, Ryder made a copy of the waiver and put the copy with petitioner's file. That copy (Exhibit 21) does not have a taxable year stated on the form. On April 2, 1985, respondent sent to petitioner a letter that stated, inter alia: "Enclosed is a copy of consent Form 872-A for your records". The original of this letter was not found, and the copy available is unclear concerning the taxable period to which it related. It is not disputed that the copy of the Form 872-A returned to petitioner (Exhibit 22) had the 1981 taxable year designated on the form and bore the signatures of petitioner, his wife, and respondent's representative. The Form 872-A that was in respondent's files (Exhibit 20-V) also had a 1981 taxable year designated on the form and the signatures of petitioner, his wife, and respondent's representative. It appears that different typewriters were used in inserting the taxable year and the restrictive clauses. In October 1986, Mr. Weidenbaum reviewed petitioner's file and discovered that the copy of the Form 872-A in his records did not have a taxable year designated on the form. [4] Petitioner relies on this form in raising the statute *698 of limitation defense. Section 6501(a) provides in relevant part that "the amount of tax * * * shall be assessed within 3 years after the return was filed * * *, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period." Section 6501(c)(4), however, provides, in part, that, if, prior to the expiration of the 3-year period, "the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon." Petitioner's 1981 return was filed on April 15, 1982, and the 3-year period of limitation would have expired on April 15, 1985, unless the period of limitations was extended by the Form 872-A executed by petitioner on March 27, 1985. Petitioner strenuously *699 argues that the Form 872-A that he executed on March 27, 1985, did not designate the 1981 taxable year; that the year was inserted by respondent later; and, therefore, the waiver was invalid. Respondent, on the other hand, contends that petitioner has not established that the waiver that was executed did not designate the taxable year. Respondent suggests that, even if the original waiver mailed to petitioner did not designate the taxable year, it was added by Weidenbaum, Ryder. Respondent also argues that petitioner is estopped from raising the issue. Under the circumstances of this case we do not find that it is necessary to decide whether the taxable year was designated by Weidenbaum, Ryder or respondent, [5] or whether estoppel applies. *700 While an agreement to waive the period of limitation is not a contract, the Court has frequently applied principles of contract law in interpreting the terms of a waiver because an agreement denotes a manifestation of mutual assent. E.g., ; ; . In , affd. , the issue before the Court was whether a waiver, which had been executed by the taxpayer but did not designate the taxable year to which it applied, was valid. There was only 1 year to which the waiver could apply. The Court applied principles of contract law and found that it was "perfectly plain from the facts * * * that the waiver was intended to cover the year 1917 [the year before the Court]". . In affirming, the Third Circuit noted that in executing the waiver "An effective and not a futile act was intended" and the *701 waiver could only apply to the 1917 taxable year. (citing . We initially, therefore, must ascertain the intent of the parties at the time the waiver was executed. Cf. . Even if we assume that there was no taxable year designated on the Form 872-A as executed by petitioner, there is no dispute that respondent intended that the form executed by petitioner apply to the 1981 taxable year. Petitioner, however, testified that in executing the waiver he did not intend to extend the period of limitations for the 1981 taxable year. [6] But when petitioner executed the waiver, he did not notice whether a taxable year had been inserted or not, and he obviously intended to extend the period of limitations for some taxable year. Petitioner discussed the waiver with Mr. Weidenbaum after he received it. At that time, they knew that petitioner had already agreed to waive the statute of limitations defense for the 1980 taxable year and that the period of limitations *702 for the 1982 taxable year would not expire until April 15, 1986. Moreover, the only year that involved both Betar and Overlord, to which the executed waiver was restricted, was 1981. Furthermore, it was not until October of 1986 that either petitioner or Mr. Weidenbaum ever even considered that the waiver executed by petitioner did not apply to the 1981 taxable year. In short, in spite of petitioner's testimony, the only conclusion possible is that petitioner intended to execute the waiver for the 1981 taxable year. Cf. . *703 Petitioner, however, contends that the insertion of the taxable year after it was executed by petitioner destroyed the validity of the waiver. Again, this argument assumes that the taxable year was inserted by respondent and not by someone at Weidenbaum, Ryder. And, again, we are willing to assume that this assumption is correct. But if, as we have found, there was a meeting of the minds that the waiver applied to the 1981 taxable year at the time the waiver was executed, the insertion of the taxable year at a later date only conformed the waiver to the agreement of the parties when it was executed. In this regard, this case is quite different from , and its progeny. In Cary the form that was executed by the taxpayer contained an erroneous taxable year. The taxpayer and his advisers were aware that the taxable year was erroneous when the waiver was executed. Respondent, before executing the waiver, changed the taxable year. While the Court found that the subsequent alteration rendered the waiver invalid, the Court also noted in its opinion, , that the taxpayer, *704 in distinguishing the Mulford case, conceded that "if respondent's employee had merely filled in a blank * * * [, that] action might not be considered strictly an alteration". In a somewhat similar vein, the Fifth Circuit has noted that "The alleged subsequent dating of the Form 872 * * * in the case at bar is not intrinsically prejudicial and does not constitute a material alteration warranting the invalidation of the form." , affg. . In sum, we hold that the subsequent insertion of the taxable year 1981 into the waiver conformed the document to the intent of the parties at the time the document was executed and such insertion did not invalidate the otherwise valid waiver. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. While Mary C. Durgin is a party to the proceedings, the deficiency results from investments made by petitioner Richard L. Durgin, and for simplicity we refer to him as petitioner.↩
3. Petitioner obtained an extension of time within which to file the 1980 return.↩
4. At trial both Mr. Weidenbaum and respondent's witnesses testified that it was the practice and policy of their respective offices not to alter waiver forms after they had been executed by a taxpayer.↩
5. There are at least two possibilities concerning the waiver. It may be, as petitioner contends, that the taxable year was added after the form was returned to respondent. It is also possible that someone at Weidenbaum, Ryder noticed the omission and added the date after the copy was made. In this regard, it seems strange that neither petitioner, Mr. Weidenbaum, nor Kay Supik noticed the omission. Petitioner sent the form to Weidenbaum, Ryder to be reviewed.↩
6. Petitioner testified as follows: Q Was that line [regarding the taxable year] blank on the form that you signed in 1985? A [by petitioner] I did not notice it at the time. Q Do you know now whether or not that line was in fact blank when you signed it? A Yes, I do. Q Okay. When did you learn that it was blank? A In about October of '86, I believe. * * * Q When you signed this document, did you intend to extend the statute of limitations for 1981? A No. Q Why did you sign this document? A I was advised to do so by my accountant. But compare: THE COURT: * * * What was your intent in signing that [the Form 872-A]? THE WITNESS: Judge, I don't know that I had any intent. I merely had informed my accountant that I had the form, and I was advised to sign it and forward it to him * * *.↩